ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| TIYA Support Services | ) ASBCA Nos. 62648, 62649, 62650 |
| | )          62850 |
| | ) |
| Under Contract Nos. W911SE-10-C-0010 | ) |
|          W911SE010-C-0011 | ) |

APPEARANCE FOR THE APPELLANT:     Jerome S. Gabig, Esq.
                                     Wilmer & Lee, PA
                                     Huntsville, AL

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
                                       Army Chief Trial Attorney
                                     MAJ Seth Ritzman, JA
                                     CPT Ethan S. Chae, JA
                                     Trial Attorneys

<u>OPINION BY ADMINSTRATIVE JUDGE CATES-HARMAN ON THE
GOVERNMENT'S MOTION TO STAY, OR ALTERNATIVELY
TO SUSPEND PROCEEDINGS</u>

Appellant TIYA Support Services (TIYA), seeks payment of award fees totaling $1,594,412.44 for work performed from January 1, 2015 through December 31, 2018. The appeals are assigned ASBCA Nos. 62648, 62649 and 62650.[1] On March 8, 2021, the government notified TIYA that it was seeking repayment of questioned costs in the amount of $5,571,282. TIYA appealed the COFD to this Board on March 11, 2021 and it was assigned ASBCA No. 62850. On May 11, 2021, the government moved to stay or alternatively suspend Board proceedings on the appeals until September 7, 2021[2] because of an ongoing civil fraud investigation. Respondent submitted a letter from the Assistant United States Attorney (AUSA) Middle District of Georgia seeking a stay of the Board proceedings to allow the civil fraud investigation to be completed. Appellant opposed the motion on

---

[1] Appeal Nos. 62648, 62649, 62650 were consolidated by the Board on August 25, 2020, in the Notice of Docketing.

[2] The request from the government as well as the attached exhibit from the AUSA for the stay of proceedings mentions a six-month suspension ending on September 7, 2021, which is less than four months from the initial date of the instant motion.

May 24, 2021, submitting an affidavit and other exhibits in support of its opposition. The parties were provided an opportunity to present oral arguments on June 30, 2021.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

1. On May 19, 2010, the government awarded the Contract No. W911SE-10-C-0011 to TIYA to provide base operation support services at Ft. Benning, GA. The contract consisted of a base period and four option years. (R4, tab 1 at 1-10)

2. The contract included Award Fee Evaluation Criteria for the determination of a quarterly award fee amount and provided:

> H.15.1. Quarterly Evaluations. The total award fee earned by the contractor shall be determined quarterly based on evaluations of the contractor's performance and performance criteria. The earned award fee for each evaluation period will be provided to the contractor.
>
> H.15.2. Award Fee Evaluation
>
> H.15.2.1. The award fee may be earned by the Contractor in whole or in part. The amount of award fee earned for each evaluation period, as described hereafter, shall be determined by the Government's subjective evaluation of the Contractor's performance. Unearned award fee from an evaluation period will not be added to potential award fee for any subsequent evaluation periods.

(R4, tab 1 at 22)

3. The approved Award Fee Plan provided for an award fee board to decide quarterly award fees over the life of the Contract. Upon the determination of an award fee, the Contracting Officer issues a contract modification providing the vehicle for payment of award fees (R4, tab 4).

4. Contract performance was scheduled to begin on September 20, 2010 (R4, tab 4, appendix 5 at 21).

5. Option year 4 was extended to cover work performed under the contract from January 1, 2017 to December 31, 2018 (R4, tabs 91-96, 101-102).

6. Request for Equitable Adjustment (REA) 13 was submitted on April 27, 2017, and requested an award fee in the amount of $761,845.42 for the period of January 1, 2015 to December 31, 2016 (R4, tab 90 at 1-2).

7. REA 14 was submitted on February 8, 2018, and requested an award fee in the amount of $512,936.72 for work completed from January 1, 2017 to December 31, 2017 (R4, tab 98 at 16-17).

8. REA 15 was filed on February 7, 2019, and requested an award fee in the amount of $319,630.30 for work completed from January 1, 2018 to December 31, 2018 (R4, tab 99 at 3).

9. Defense Contract Audit Agency (DCAA) performed audits for contract years 2011 through 2018 (R4, tabs 84, 93, 100, 106).

10. DCAA questioned certain direct charges by TIYA maintaining that they were more appropriate for General and Administrative (G&A) expenses (R4, tabs 84 at 3-4; 93 at 4, 6; 100 at 4, 6; 106 at 4-6). DCAA also questioned direct charges from TIYA's subcontractor invoicing for its proportional share of the award fee, and TIYA then claiming the proportional award fee share as a direct cost (R4, tabs 93 at 14-15; 100 at 14-15; 106 at 12-13).

11. On March 18, 2020, DCAA issued its audit report finding that TIYA's accounting system does not comply, in all material respects, with the system criteria as prescribed in Federal Acquisition Regulation (FAR) 53.209, SF-1408, Pre-award Survey of Prospective Contractor Accounting System Criteria, FAR 31.201-3, DETERMINING REASONABLENESS, and FAR 31.201-6, ACCOUNTING FOR UNALLOWABLE COSTS. DCAA found three material non-compliances related to the accumulation and allocation of G&A expenses (R4, tab 105 at 4-5).

12. DCAA questioned a total of $5,571,282 in charges by TIYA (R4, tabs 84 at 3-4; 93 at 4; 100 at 4; 106 at 4).

13. On June 19, 2020, the Contracting Officer denied REAs 13, 14, and 15 (R4, tab 107).

14. The Contracting Officer rejected TIYA's calculations for the actual Individual Job Order (IJO) costs less the IJO budget because of a mixing of labor and material costs that are not allowable for an award fee. Furthermore, she found that an application of the total cost less the service costs to the additional earned IJO Award Fee, resulted in a negative amount. The contracting officer concluded that the data submitted did not prove that TIYA or its subcontractor performed labor in excess of its stated budget for IJOs. The contracting officer took exception to the data relied upon by TIYA for use in the determination of award fees. When applying actual IJO costs with the IJO Budget, it resulted in a negative amount indicating IJOs were performed under the approved budget amount. Accordingly, she concluded that additional award and base fee were not due to TIYA. (R4, tab 98 at 2; tab 107)

3

15. On August 11, 2020, TIYA's Counsel submitted a certified claim and request for final decision to the Contracting Officer on REAs 13, 14, and 15 (R4, tabs 108-109).

16. Instead of issuing a COFD on appellant's certified claim, on August 14, 2020, the Contracting Officer again sent the prior decision regarding REAs 13, 14, and 15 in response to the submission by TIYA's Counsel (R4, tab 110).

17. On August 24, 2020, appellant filed its notice of appeal of its claim encompassing REAs 13, 14, and 15. By Order dated August 25, 2020 the appeals were docketed as ASBCA Nos. 62648, 62649, and 62650 and consolidated.

18. On March 8, 2021, the Contracting Officer issued a final decision seeking $5,571,282.00 in repayment of the questioned costs identified in DCAA Audit Report Nos. 1101-2011H10100011 dated September 28, 2016 ($666,561.00), 1101-2112G10100001, 1101-2013G10100008, 1101-2014G10100002 and 1101-2015G10100012 dated February 16, 2018 ($2,740,672.00), 1101-2016G10100006 and 1101-2017G1010007 dated March 22, 2019 ($1,523,581.00), and 1101-2018G10100008 dated March 23, 2020 ($640,468.00), for questioned costs based on improperly claimed direct costs, subcontractor costs, and travel costs. (ASBCA No. 62850, Notice of Appeal dtd. March 11, 2021)

19. TIYA appealed the government claim on March 11, 2021, which was docketed as ASBCA No. 62850 (ASBCA No. 62850, Notice of Appeal dtd. March 11, 2021). This appeal was not consolidated with the previously-filed matters.

20. On March 26, 2021, United States Army Criminal Investigation Division, Major Procurement Fraud Unit, advised the United States Attorney's Office of potential fraud associated with Contract No. W911SE-10-C-0011. On or about April 9, 2021, the United States Attorney's Office for Middle District of Georgia, was made aware of potential fraud perpetrated by TIYA in performance of the contract. (Gov't. mot., ex. 1)

21. On May 7, 2021, AUSA Todd P. Swanson, Esq., Middle District of Georgia, states:

> We are now actively investigating whether TIYA and associated entities or individuals violated the False Claims Act, 31 U.S.C. § 3729, *et seq.,* (the "FCA"), with respect to its claims for payment under The Contract. Two issues, both of which were flagged as part of nine (9) annual cost audits conducted by the Defense Contract Audit Agency ("DCAA") are the focus of the USAO Fraud Investigation. The first issue being investigated is TIYA's alleged

4

improper classification of indirect labor costs as direct labor costs in an effort to exceed the contract's 4% indirect cost cap (the "G&A Issue"). The second issue being investigated is TIYA's handling of award fees which appear to have been shared with subcontractors and then billed back to TIYA (and then the Government) as subcontractor costs (the "Award Fee Issue"). . . .

As such, any ruling in the ASBCA Matter would be a factual determination that affects the determination of fraud on the part of TIYA in the USAO Fraud Matter. . . .

Discovery in the ASBCA Matter would allow TIYA to conduct broad civil discovery on the same issues, witnesses, and facts that are the subject of the USAO Fraud Investigation. This would significantly prejudice the USAO Fraud Investigation as it would allow TIYA to obtain information through broad, ASBCA-based civil discovery that it would not be able to obtain were this case to proceed as an FCA matter, where the United States is empowered to conduct a civil fraud investigation using Civil Investigative Demands, among other tools. Accordingly, the ASBCA Matter's concurrent discovery will negatively affect the USAO Fraud Investigation's ability to utilize the FCA and its tools. A stay of the ASBCA Matter would avoid such prejudice.

(Gov't mot. ex. 1 at 1-3)

## DECISION

Board Rule 18(a) allows the Board to suspend proceedings "for good cause shown." In appropriate cases, if a suspension "has continued or may continue for an inordinate length of time," Rule 18(b) authorizes the Board to dismiss the appeal without prejudice and allow the parties to move to reinstate the appeal later. Our precedent reveals that we have been amenable to requests for a stay when there is an ongoing fraud investigation. While we have the inherent authority to stay proceedings, we do so with caution, considering the competing interests of the parties. *Public Warehousing Co., K.S.C.* ASBCA No. 58088, 17-1 BCA ¶ 36,589; *Public Warehousing Co., K.S.C.* ASBCA No. 57510, 17-1 BCA ¶ 36,700; *Unconventional Concepts, Inc.,* ASBCA Nos. 56065 *et al*, 08-2 BCA ¶ 33,934.

5

When weighing a decision to stay or suspend proceedings in light of a pending criminal investigation or proceeding, the Board must consider, weigh and balance several factors, including: (1) whether the facts, issues and witnesses in both the civil and criminal proceedings are substantially similar, (2) whether the government's on-going investigation would be compromised by going forward with the civil case, (3) whether the proposed stay could harm the non-moving party, and (4) whether the duration of the requested stay is reasonable. *Public Warehousing Co.,* ASBCA No. 56116, 08-1 BCA ¶ 33,787 at 167,227. We address each of the factors below:

*Factor I: Similar Facts, Issues and Witnesses*

The government maintains that the issues before the Board in each of the four (4) appeals address the "same key questioned costs" involving the application of the award fee provisions of the respective contract. While the issues in the civil fraud investigation extend beyond the question of the entitlement and amount of award fee, the issues "are closely intertwined." By the same token, the witnesses that would be called in the appeals before the Board, are the same witnesses that the United States intends to use in conducting its fraud investigation. (Gov't. mot. at 9-10) AUSA Swanson states in his May 7, 2021 letter that "the witnesses, documents, and facts related to these contract dispute issues wholly overlap with the witnesses, documents, and facts related to the USAO Fraud Investigation." (SOF ¶ 21) Appellant argues that the "REAs are based on award fees that are due and owing TIYA. Conversely, according to the Acting U.S. Attorney, the investigation pertains to mischarging of indirect costs as direct costs and amounts placed in an indirect cost rate proposal resulting in TIYA being paid twice for award-fee flowed down to a subcontract. Bottom line: there is little or no similarity." (App. opp'n at 11) The government agrees in part with appellant's stance – that the REAs are based on award fees. However, the government maintains "the requests are for payment of award fees based on costs incurred and charged to specific projects." (Gov't. reply at 1)

It is the costs incurred that are the subject of the DCAA reports, and ultimately the questioned costs upon which the contracting officer relies in rejecting the costs claimed in REAs 13, 14, and 15. (R4, tab 93 at 18) The government concludes that the withholding of moneys are the subject of the three REAs (Nos. 62648, 62649 and 62650), and the United States' affirmative claim (No. 62850) is the subject of the G&A issue and the award fee issue which were identified in the nine (9) DCAA cost audits. REAs 13, 14, and 15 request award fees over and above the contractually budgeted amount. Award fees are based upon, among other things, the work orders, G & A costs, and cost and pricing data. Each element must be properly supported. While appellant submitted its requests for award fees, and provided its computations for each, the government may review, analyze and prepare its own calculations. The contracting officer rejected TIYA's calculations and the underlying support, using some of the same information provided by DCAA in the audit reports. The audits

6

were then considered by the contracting officer in issuing its demand letter seeking the return of $5,571,282. (SOF ¶ 14) These are very same audits that were provided to the United States Army Criminal Investigation Command, Major Procurement Fraud Unit, and then to the Department of Justice. The two issues being investigated are (1) the improper classification of indirect labor costs as direct labor costs, classified as the "G&A Issue" and (2) how TIYA billed award fees shared with its subcontractor and then billed back to TIYA as a subcontractor cost, classified as the "Award Fee Issue." (SOF ¶ 21) While both of these issues relate directly to the government's affirmative claim, they also directly relate to TIYA's entitlement to award fees as sought in REAs 13, 14, and 15. Accordingly, the witnesses, documents, and facts related to these contract disputes wholly overlap with the witnesses, documents, and facts related to the USAO Fraud Investigation.

While in due course appellant may have appropriate rebuttals to each challenge taken by the Contracting Officer in denying the REAs, that does not diminish the conclusion that the facts and issues involved in each of the four (4) ASBCA appeals are similar. Even where the precise elements of appellant's appeals, the government defenses, and the government's affirmative claim do not line up perfectly with the issues in the investigation, we hold that they are so intertwined that they weigh in favor of the government.

> *Factor II: Whether the ongoing criminal investigation will be harmed by proceeding with the appeals at the Board?*

The government persuasively argues that by allowing the proceedings at the Board to continue, *inter alia,* advancing discovery against the government, the fraud investigation could be compromised. The government echoes the concerns expressed by AUSA Swanson that "allowing discovery of information not normally available in a fraud investigation" could allow information to be disclosed about the fraud investigation. Furthermore, discovery in the Board proceeding "will negatively affect the USAO Fraud Investigation's ability to utilize the FCA and its tools." (SOF ¶ 21)

Appellant counters by arguing that "there is nothing to investigate" and that DCAA "did not perform a competent audit to support DCAA questioning $979,419 in labor charges" stating that all that remains to be investigated is "to examine the timecards." (App. opp'n at 14) Appellant continues its challenges by arguing that "another action item that is long overdue—to assign an experienced procurement attorney at the U.S. Army Legal Services Agency to write a scholarly opinion on whether TIYA was correct to charge the time in question as a direct cost on the contract. An experienced procurement attorney should be able to prepare such an opinion within a day." (App. opp'n at 14-15) Appellant fails to address this factor

with solemnity providing little for the Board to consider in weighing it.[3] In light of the information and arguments presented, we find that continuing with the appeals, and allowing TIYA to conduct broad civil discovery on the same issues, witnesses, and facts will complicate discovery in our proceedings, and impose a hardship on the government in both cases. We are persuaded that the government will suffer a hardship if it were to have to proceed with the appeals at this time.

> *Factor III: Whether the non-moving party will be harmed by a stay of the proceedings at the Board?*

The appellant maintains that it will be harmed by a stay of the proceedings because a stay would hamper "TIYA's right under the Contract Disputes Act of 1978 to 'to the fullest extent practicable provide informal, expeditious, and inexpensive resolution of disputes.'" (App. opp'n at 15-16) Appellant argues that it merely "is looking to be paid money that it began earning in January 2015 as part of an award fee" (app. opp'n at 15). However, the government points to the fact that this cost contract is valued in excess of $500,000,000, with base and award fee, and that all payments have been paid to appellant. Additionally, the amounts sought by appellant in the three (3) appeals represent "only 0.3% of the contract." (Gov't reply at 5)

The government relies on *Hardrives, Inc.* IBCA Nos. 2319 *et al.*, 91-2 BCA ¶ 23,769, as support for its argument that because the facts and the issues are so inextricably intertwined, proceeding with these appeals would be neither practical nor expeditious. (Gov't mot. at 13-14) This Board ruled similarly in *Gov't Bus. Servs. Grp., LLC*, ASBCA Nos. 54588, 54973, 05-2 BCA ¶ 33,059 at 163,870, finding that the parties' resources will be unnecessarily taxed and judicial efficiency not served if the present proceedings are permitted to continue while the fraud is being investigated. The appeals here are early in the proceedings. The notice of appeal on REAs 13, 14, and 15 (ASBCA Nos. 62648, 62649, 62650) filed on August 24, 2020. (SOF ¶ 17) The government filed its motion to stay or in the alternative suspend the proceedings on May 11, 2021; only 8 months into the proceeding, and very early in the discovery process. In addition, ASBCA No. 62850, involving the government's affirmative claim again TIYA was filed on March 11, 2021. An Order was entered granting an

---

[3] In its opposition, appellant devoted 14 pages of argument discussing the requirements for an injunction arguing that a "stay is a (sic) simply a form of injunction" (app opp'n at 17-31; app. surresp. at 1, ex. 1). An injunction and a stay are not the same. The Board has long held that it does not have jurisdiction to entertain injunctive relief. *Puma Energy Honduras, S.A. De C. V.,* ASBCA No. 61966, 20- 1 BCA 37,507; *Versar* ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,959; *High-Tech Launderette, LLC.,* ASBCA No. 62259, 20-1 BCA ¶ 37,539; *Rig Masters, Inc.*, ASBCA No. 52891, 01-2 BCA ¶ 31,468 at 155,379.

extension to the government to file the R4 and the complaint until May 16, 2021 (Bd. Order dtd. April 14, 2021). At the time of filing the motion to stay, the parties were only 2 months into that proceeding. As discussed above, the facts related to ASBCA No. 62850 are so interrelated with Appeal Nos. 62648, 62649, and 62650, that consolidation is necessary in the interest of judicial efficiency. Thus, even absent the requested stay, the progress of ASBCA Nos. 62648, 62649, and 62650 would be interrupted while waiting for ASBCA No. 62850 to catch up. We are mindful that a contractor has the right to an expeditious resolution of disputes. *Laguna Constr. Co.,* ASBCA No. 58292, 13 BCA ¶ 35,315 at 173,367. Still, we should not let that notion allow issues of public interest to be ignored. We conclude that the balance of harms weighs in favor of the government.

### *Factor IV: Is the Duration of the Requested Stay Reasonable*

AUSA Swanson requested that respondent seek a stay of the ASBCA Matter for a period of six (6) months ending on September 7, 2021 (gov't mot. ex. 1 at 3). Appellant maintains that the requested time period of six months is *per se unreasonable.* (App. opp'n. at 16) Appellant's argument provides little else, and instead focuses on criticism of the competencies of DCAA and government counsel without any attempt to support its commentaries. (App. opp'n at 16-17) Contrastingly, AUSA Swanson emphasizes the intention to proceed proactively and efficiently in the fraud investigation (gov't mot. ex. 1 at 3). Appellant provides no indication that the AUSA and his team will proceed in any other fashion. To the contrary, while this matter involves a $500,000,000+ cost contract, with nine (9) incurred cost audits, several issues related to the current award fee requests, and the manner and application of the sharing of award fee with a major subcontractor, AUSA Swanson accomplished much in the short time between April 9, 2021 (the receipt of the audits and other information) and May 7, 2021 (AUSA's request of Army to seek a stay of the Board proceeding). A detailed explanation of the estimated time was provided, along with the steps that will be taken over the six-month time frame. (SOF ¶ 21) When asked at oral argument whether the time period requested was still on track, the government responded that recent conversations with AUSA Swanson confirmed that the timeline of September 7, 2021, remained on target.

The request for a six-month stay is reasonable and consistent with other similar requests coming before the Board. *Unconventional Concepts, Inc.,* ASBCA Nos. 56065 *et al.*, 08-2 BCA ¶ 33,934 (six-month stay granted to allow criminal investigation to be concluded); *Public Warehousing Co. K.S.C.* ASBCA No. 56116, 08-1 BCA ¶ 33,787 (six month stay granted to allow the Department of Justice to complete its civil and criminal investigations); *Aydin Corp.,* ASBCA No. 43273 *et al.*, 94-1 BCA ¶ 26,588 (180-day stay granted to allow a criminal investigation to proceed without interference). *M.A. Mortenson Co.,* ASBCA No. 52881 *et al.*, 03-1 BCA ¶ 32,293 (motion to stay proceedings for 180 days was granted to allow fraud

investigation to proceed). Given the size of the contract and the scope of the investigation, a stay of these proceedings until September 7, 2021, is eminently reasonable.

Having weighed the competing interests of the parties, we believe the government has made a sufficient showing for a six month stay with respect to these appeals. We have the inherent authority to manage our docket and may stay proceedings in appropriate circumstances. *KiSKA Constr. Corp.-USA and Kajima Eng'g and Constr, Inc.*, *A Joint Venture*, ASBCA No. 54613, 54614, 05-1 BCA ¶ 32,922 at 163,082.

## CONCLUSION

The motion to stay proceedings in the four captioned ASBCA appeals is granted. The above-captioned appeals (including ASBCA No. 62850) are consolidated and stayed through September 7, 2021. The hearing originally set for February 1, 2022, is cancelled. A separate hearing cancelation order will follow.

Dated: July 22, 2021

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62648, 62649, 62650, 62580 Appeals of TIYA Support Services, rendered in conformance with the Board's Charter.

Dated:  July 23, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals